IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, N92676, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CHRISTINE BROWN, | ) |
| DR. MEYERS, | ) |
| NURSE PRACTITIONER PLUM[1], | ) |
| PHYSICIAN'S ASST. DESAI, | ) |
| JOHNNY | ) |
| JENNIFER, | ) |
| JOHN DOE 1 (FURLOUGH SCHED.), | )   Case No. 25-cv-1423-DWD |
| AMY LANGFORD, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| LATOYA HUGHES, | ) |
| NURSE ERIN, | ) |
| NURSE VICTORIA, | ) |
| NURSE DAWN, | ) |
| NURSE TRACY, | ) |
| NURSE MORGAN, | ) |
| NURSE CAITLYN, | ) |
| NURSE EMILY, | ) |
| NURSE MICHELLE, | ) |
| NURSE AMANDA, | ) |
| NURSE SUMMER, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Ted Knox, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Dixon Correctional Center, brings this civil rights action pursuant

---

[1] Plaintiff names an individual as "Plum" in his case caption, but otherwise discusses this person in the factual allegations as Blum.

to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center (Pinckneyville). (Doc. 1). Plaintiff alleges that the defendants have violated his rights by failing to provide accommodations or treatment for his lumbar spinal stenosis and left-hip osteoarthritis and tendonitis. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On February 27, 2023, Plaintiff arrived at Pinckneyville and informed Defendant Tracy that prior to his transfer he had medical holds related to his lumbar spinal stenosis and left-hip osteoarthritis and tendonitis. (Doc. 1 at 6). Tracy expressed frustration with Plaintiff's transfer from Menard because Pinckneyville was not interested in dealing with inmates who had medical holds. On March 7, 2023, Plaintiff informed Defendant Chrstine Brown of his previous medical holds, and he sought medical care and reasonable accommodations. On March 8, 2023, Plaintiff wrote Defendant Langford (the prison's ADA coordinator) to ask for placement on the physically challenged gym list

due to his spine and hip issues. (Doc. 1 at 6). Plaintiff alleges he had accommodations at Menard.

On March 9, 2023, Plaintiff saw Defendant Blum and informed him that he previously had an appointment to see pain management doctors for an injection. Plaintiff alleges that he asked Blum for a slow walk permit, which he previously held, but Blum declined on the basis that Pinckneyville did not offer that specific permit. (Doc. 1 at 6). On March 10, 2023, Plaintiff encountered Defendant Meyers on blood pressure treatment line, at which point he asked Meyers for placement on the ADA gym list. Meyers declined because Plaintiff was not an amputee. (Doc. 1 at 6-7). Meyers also denied Plaintiff's request for physical therapy. (Doc. 1 at 7).

On March 16, 2023, Plaintiff submitted an emergency grievance about his requests for accommodations, missed doses of pain medication, and his prior appointment with a pain specialist. (Doc. 1 at 7). He alleges that he missed doses of his pain medication on 16 dates from March to July of 2023. (Doc. 1 at 7). Without his medications, he suffered shooting pains up and down his leg and his gait was less steady, which in turn caused his hip pain to worsen. Plaintiff submitted additional grievances on March 28, 2023, May 20, 2023, and July 21, 2023. He faults Defendants Brown, Meyers, Wexford, IDOC, Johnny, and all 5-day nurses who were assigned to deliver his medication. He alleges that during the grievance process the missed doses were acknowledged. He complained that defendants associated with the grievances let him suffer in prolonged pain and did not assist with his pain management appointment despite knowing it had been cancelled.

(Doc. 1 at 7). Plaintiff faults all named nursing defendants for failing to deliver his medications while assigned to work on his unit. (Doc. 1 at 9).

On July 30, 2023, Plaintiff submitted an emergency grievance after being informed his July 2023 pain management appointment had been cancelled. (Doc. 1 at 8). Plaintiff faulted Defendants Brown, Meyers, Blum, Desai, Johnny, and Wexford for turning a blind-eye to his pain issues, which caused him prolonged suffering. He alleges that Brown responded that she could not find any record of past cancelled appointments, but that Plaintiff had an appointment in the near future. (Doc. 1 at 8). On August 28, 2023, Plaintiff submitted yet another grievance about his pain management appointment, and Brown gave the same response. On September 26, 2023, Plaintiff wrote an emergency grievance faulting the John Doe furlough scheduler for failing to keep accurate records about past pain management appointments, thus leading to delays or denial of subsequent appointments. (Doc. 1 at 9). Brown responded that there was no policy requiring a certain kind of recording keeping. (*Id.*). Plaintiff alleged the non-policy contributed to his delayed care.

Meanwhile, on July 13, 2023, Plaintiff informed Defendant Langford that he needed ADA gym access to maintain mobility. (Doc. 1 at 9). On August 6, 2023, Plaintiff submitted an emergency grievance regarding his ongoing request for ADA accommodations. He alleges that Defendant Langford responded by claiming he did not meet the criteria for immobility gym and that he did not have doctor's orders for physical therapy. (Doc. 1 at 8). Plaintiff alleges that despite attaching records that showed previous accommodations, Defendant Brown, Langford, and Hughes continued to deny

his ADA requests. Plaintiff alleges he also pleaded with Defendant Jennifer (the physical therapist) for physical therapy, but she declined because only a doctor was authorized to direct physical therapy. (Doc. 1 at 10).

Plaintiff faults Defendants Wexford and Hughes for being aware of his medical hold and his need for treatment prior to his transfer, and for ignoring the hold and transferring him anyways. (Doc. 1 at 9-10). Plaintiff seeks compensatory and punitive damages for violations of the ADA/RA and the Eighth Amendment. (Doc. 1 at 10). In support of his complaint, he tendered grievance records, sick call requests, medical permits, and various forms of correspondence. (Doc. 1 at 12-82).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Blum, Meyers, and Brown for delaying Plaintiff's pain management appointment or failing to provide timely pain medications, causing him to suffer prolonged pain and worsening his physical condition;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference or ADA/RA claim against Defendants Blum, Meyers, Brown, Langford, and Hughes for refusing Plaintiff ADA gym access, physical therapy, or a slow walk permit.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff named Nurses Erin, Victoria, Dawn, Morgan, Caitlyn, Emily, Michelle, Amanda, and Summer in the case caption but did not mention them by name in his complaint. Naming a defendant in the caption without describing their role in the factual allegations is insufficient to state a claim under § 1983. *See, Black v. Lane*, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994) (merely naming a defendant without describing his or her personal role is insufficient to state a claim). Section 1983 liability requires a showing that each individual defendant had a personal responsibility for the harm alleged. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Additionally, a generic, "one or more defendants caused me harm" argument is not enough to plead a valid claim. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Near the end of the complaint, Plaintiff generically alleged that all the nurses named caused him harm by denying his noon pain medications, but this is exactly the sort of "one or more defendants harmed me" allegation that is insufficient to establish personal responsibility for a § 1983 claim. Thus, Defendants Erin, Victoria, Dawn, Morgan, Caitlyn, Emily, Michelle, Amanda, and Summer are dismissed without prejudice for failure to state a claim.

Plaintiff also named Defendant Tracy as a nurse. He alleged that he saw Tracy on the day he arrived at Pinckneyville, and she responded with dissatisfaction when he explained that he was transferred from Menard despite having an active medical hold. This is the only individualized allegation Plaintiff makes against Tracy. Although he says he told Tracy about his spine and hip conditions, he does not allege he asked her for any immediate care or accommodation. The mere allegation that Tracy was notified of a prior medical hold, or that she expressed dissatisfaction, is not enough to sustain an Eighth Amendment claim for deliberate indifference to a serious medical need. Thus, Tracy will also be dismissed for failure to state a claim.

Plaintiff also named physician's assistant Desai, and director of nurses Johnny, as defendants, but he never discussed an individual encounter or direct correspondence with these two individuals. The only mentions Desai and Johnny get are in association with grievances, but Plaintiff does not explain what role they might have played in the grievance process or why he named them in the grievances in the first place. Plaintiff's fleeting mentions of those two are insufficient to sustain a claim.

Plaintiff alleges that he submitted a grievance in late September of 2023 against John Doe furlough scheduler for failing to keep adequate records about cancelled pain management appointments, which he alleges contributed to his delay in being scheduled. Defendant Brown responded that there was no specific policy for how furlough schedulers needed to keep documentation, but ensured an appointment would occur. This claim rests purely on speculation that the furlough scheduler was in fact responsible for the delays Plaintiff experienced, and that it was done with deliberate indifference to

his needs. Plaintiff does not explain what the furlough scheduler knew about his condition at the time when appointments allegedly may have been cancelled, nor does he even directly allege the furlough scheduler had control over cancellations. At most, the facts alleged may support a claim for plain negligence, but negligence is not sufficient for § 1983 liability. John/Jane Doe 1 furlough scheduler is dismissed without prejudice.

Near the end of the complaint, Plaintiff alleged that Defendant Jennifer, the physical therapist refused to see him for physical therapy because at Pinckneyville inmates needed a doctor to order physical therapy. This is the only interaction that Plaintiff described with Jennifer. He does not allege that he described his injuries or treatment history to her, nor does he allege he presented her with any acute physical issues. In the prison context, nurses may defer to instructions given by physicians unless an inappropriate or questionable medical practice is obvious, and he or she knows the inmate is at risk of serious harm. *See e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015). Jennifer is allegedly a physical therapist, not a nurse, but it is still reasonable to think she could defer to a doctor if a doctor had to issue physical therapy orders at the prison as she allegedly told Plaintiff. Plaintiff does not allege that he presented Jennifer with any facts sufficient for her to think that he was at serious risk or that a doctor was improperly denying him needed care. As such, Jennifer cannot be held liable for deferring to the prison doctor to prescribe physical therapy.

Finally, Plaintiff named Wexford Health Source and faulted them for allowing him to be transferred despite having a medical hold. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an

unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Plaintiff's allegations against Wexford are too generic to proceed, and do not allude to an actual policy, custom or practice that caused him discrete harm.

To the extent he names Wexford as responsible during the grievance process, he does not explain how it was a policy, custom, or practice that led to the harm grieved, so these allegations are insufficient. Near the end of the pleading, he faults Wexford for allowing his transfer despite knowing he had a medical hold, but it is not apparent that Wexford had any control over transfers, or that they choose to transfer him pursuant to a policy, custom, or practice. Plaintiff does not offer any allegations to attribute his personal situation to a systemic issue as opposed to a one-off occurrence. Plaintiff also

alleges in passing that Wexford should be responsible for a call pass policy that had him going to the medical unit for noon medications while staff went to his housing unit to deliver the same medications. If there was a formal policy that hindered his access to medications it may be actionable against Wexford, but simply naming a policy in a few words without clearly describing it is insufficient. The allegations against Wexford are dismissed without prejudice.

In sum, the allegations against Defendants Desai, Johnny, Jennifer, John Doe Furlough Scheduler, Wexford, and Nurses Erin, Victoria, Dawn, Tracy, Morgan, Caitlyn, Emiley, Michelle, Amanda, and Summer are dismissed without prejudice as insufficient to state a claim.

## Analysis

The remaining Defendants after the preliminary dismissals are Defendants Brown, Meyers, Blum, Langford, and Hughes.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific

care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff alleges he saw Meyers and Blum directly for care. He saw Blum on March 9, 2023, and informed him that he was scheduled to see pain management doctors. Ultimately, he claims he did not see a pain management doctor until October of 2023, despite many grievances in the interim. The key for now is that Plaintiff does not allege that he ever saw Blum again, that Blum had a role in scheduling, or that he attempted to contact Blum about the delays in his appointment or the physical repercussions. Without more information about Blum's knowledge or role in the pain management situation, he cannot be held liable for delaying or denying the care. Claim 1 is insufficient against Blum.

Plaintiff does not explain an instance when he informed Meyers that his medication was not being regularly and timely distributed or that he needed a pain management appointment. The most he says about Meyers in relation to pain management is that he faulted Meyers in a grievance about the issue, but this is not enough because it does not describe Meyers' personal knowledge or role in the issue.

As to Brown, Plaintiff alleges that she was the healthcare unit administrator and that he regularly notified her via emergency grievances about his issues accessing pain medication doses at regular intervals, as well as his need for a pain management appointment. He included grievances that reflect Brown participated in the process of fielding and responding to his queries. Given that Plaintiff alleges he submitted multiple grievances received by Brown that spanned multiple months and raised more than one

incident of missed doses or missed appointments, his allegations are sufficient to proceed under Claim 1 against Defendant Brown.

Turning to Claim 2, Plaintiff alleges he sought a slow walk permit, permission to use the ADA gym, and physical therapy. Though Plaintiff characterizes these items as needed accommodations, and he speaks about them in terms often associated with ADA or RA claims (for example by alleging he sought no-cost accommodations), wording alone is not enough to turn facts into an actionable legal claim. Under the ADA and RA, a Plaintiff must allege that he is a qualified individual with a disability, who was denied the benefits of the services, programs, or activities at the prison, by reason of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The ADA and RA also require a prison to reasonably modify its policies or practices to avoid discrimination based on disability. 28 C.F.R § 35.130(b)(7); 28 C.F.R. §41.53. Practically speaking, the two statutes are the same for purposes of initial review. *See e.g.*, *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). The Seventh Circuit has recognized that disability discrimination under the RA and the ADA can be "established in three different ways: '(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'" *A.H. by Holzmueller v. Ill. High School Assoc.*, 881 F.3d 587, 592-93 (7th Cir. 2018). The proper defendant for an ADA or RA claim is the Department of Corrections or the Director. *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012) (the department or the director of the department are appropriate defendants for ADA/RA claims). An inmate seeking money damages under the ADA or RA must also establish that the entity

acted with deliberate indifference to his situation. *See e.g.*, *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022) (to recover money damages, plaintiff must identify intentional misconduct, and not mere negligence, by a named defendant); *Bernard v. Ill. Dept. of Corr.*, 2023 WL 2018915 at *7 (N.D. Ill. Feb. 15, 2023) (in the ADA and RA contexts, courts evaluate knowledge and deliberate indifference attributable to the prison entity).

At this early juncture, Plaintiff has not plausibly alleged that the denial of ADA gym, a slow walk permit, or physical therapy actually denied him access to the prisons' services or activities. An inconvenience or something that causes discomfort, as opposed to total denial of a program or service, is not sufficient to make out an ADA/RA claim. *Wagoner v. Lemon*, 778 F.3d 586, 593 (7th Cir. 2015) (finding that a paraplegic inmate did not state an ADA or RA claim based on inadequate transportation for a wheelchair or the lack of wheelchair repairs because while both issues caused inconveniences, they did not deny him access to services or programs). Thus, Claim 2 against Defendant Hughes under the ADA/RA is insufficient to proceed.

Plaintiff also individually faults Defendants Brown, Meyers, Blum, or Langford for denying him accommodations. He alleges he informed Meyers and Blum of his need for a slow walk permit and ADA gym access, but they indicated the slow walk was not available at Pinckneyville and the ADA gym was only for amputees. Plaintiff does not allege he was ever harmed by the lack of a slow walk permit. He does allege that without gym access his mobility decreased, but he does not allege that he ever circled back to Meyers or Blum to tell them about these issues as time progressed. The bare allegation that he sought accommodations from each of them on a single occasion in March of 2023

is not enough to establish deliberate indifference because inmates cannot demand particular care.

Plaintiff alleges Brown and Langford were made aware of his requests for accommodations via grievances, and he faults them for not acquiescing or for stating he was not eligible. Again, inmates cannot demand a particular course of care. Plaintiff insists that he could not maintain mobility without the ADA gym accommodation or physical therapy, but he does not explain why he was otherwise completely unable to complete solo exercise or to independently work on his mobility. On the bare allegations presented, he has not submitted enough information to suggest that Brown or Langford were actually deliberately indifferent as opposed to negligent. Claim 2 will be dismissed.

It is worth noting, to the extent that Plaintiff wished to hold Defendant Hughes liable for her role in signing off on grievances, there is no indication that Hughes received information sufficient to indicate that she needed to intervene but failed to act. The grievances attached to the complaint showed that the facility frequently secured responses from medical staff, and that the ARB even directed the Warden to review medical administration procedures with staff. (Doc. 1 at 24, 26—grievance responses indicating that there were internal discussions with medical administration about ensuring adequate medication distribution and that the warden was directed to ensure adequate medication distribution). These responses suggest that the facility and the grievance process were providing oversight for the issues presented. A high-level prison official can defer to medical staff and those at lower levels of the prison administration if the record demonstrates that issues were addressed and mitigated. Against the backdrop

of the information contained in the grievances, it is not apparent that Hughes signed off on a grievance that plainly warranted further investigation.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant Christine Brown.  By contrast, **Claim 2** and all other allegations are dismissed as insufficient.  The Clerk of Court shall **TERMINATE** Defendants Meyers, Blum, Desai, Johnny, Jennifer, John Doe furlough scheduler, Langford, Wexford, Hughes, Erin, Victoria, Dawn, Tracy, Morgan, Caitlyn, Emiley, Michelle, Amanda, and Summer for Plaintiff's failure to state a sufficient claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendant Christine Brown: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: October 15, 2025                                /s *David W. Dugan*
                                                      _____
                                                      DAVID W. DUGAN
                                                      United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.